## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

FILED VIA MAIL
JACKSONVILLE, FLORIDA

NOV 0 3 2017

In re:                            :

        :    Chapter 7

LILLY JOSEPHINE REAL.        :

           :

           :    Case No.:16-03913(JAF)

        Debtor.        :

CLERK, U.S. BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

### MOTION TO DISMISS OF FRANK E. POLO FOR LACK OF PERSONAL JURISDICTION, IMPROPER VENUE, AND MOTION TO QUASH FOR DEFECTIVE SERVICE OF PROCESS ON "MOTION FOR SANCTIONS AGAINST CREDITOR FRANK POLO," AND FOR VIOLATION OF DUE PROCESS.

Frank E. Polo ("I," the "Creditor" or "Mr. Polo"), hereby moves this Court for an order

quashing Lilly J. Real's (hereinafter the "Debtor") "*Motion for Sanctions Against Creditor Frank*

*Polo*" for defective service of process and abating this cause for lack of personal jurisdiction,

improper venue and would show:

### § 1.FACTS:

1.  Mr. Polo was *never* served with a summon and complaint in the case No. Case No.  3:16-
bk-03913(JAF).

2.  The motion for sanctions was served on Creditor's mother, in a house where the Creditor

has not lived for years now (since 2013), does not keep any property, and does not conduct any

business.

3.  Creditor was declared indigent by the Eleventh Circuit Court for Miami Dade's Clerk of

Court in accordance with §57.082 Fla. Stat. *See* attached declaration of indigent status. (EXHIBIT

D)

4.  Ms. Real is a Lawyer with License to practice in the state of Florida with License Number

77682 since April 4, 1996 according to the public record contained in the Florida Bar website.

5.   Contrary to Ms. Real accretion in her motion for sanctions, Ms. Real ("Debtor,") had reason to believe that Creditor (Mr. Polo) was likely to initiate a civil and/or Criminal procedure against her as early as June 16, 2015, or before. On June 16, 2015, Debtor received a letter from the Creditor telling her that he had not intent to report her to the Florida Bar, nor intentions to proceed against her criminally or in civil court, and affidavit of Debtor filed in State court shows she knew about this email. *See* EXHIBIT A (P-2:10). Moreover, Mr. Polo had already filed a Motion to vacate Final Judgment for Fraud on the Court. *See* EXHIBIT B.

6.   When Mr. Polo found out that Ms. Real Attorney had filed and amendment of her schedule after the meeting of creditors had passed, Mr. Polo stopped any kind of proceeding against Ms. Real and filed a "*Notice of Temporary Intent not to Prosecute*"(EXHIBIT C,) in which Mr. Polo clearly and unambiguously expressed that he would stop all prosecution against Ms. Real until he had received further relieve from Automatic Stay, not knowing that the Automatic Stay was no longer in place, because the meeting of creditors had already passed and Mr. Polo was never served with notice of the proceeding.

7.   The Creditor in this case, was under the bona fide impression that he had a legal right to bring the cause of action against Ms. Real in state court, despite the amendment of Exhibits after the meeting of creditors. Creditor believes that because of faulty (nonexistent) service of process, the Federal Bankruptcy court did not have jurisdiction over Creditor to adjudicate a Judgment without first obtaining jurisdiction over the Creditor. Consequently, the Creditor asked the State court, where substantial part of the events occurred, to issue a Declaratory Judgment ruling on whether or not creditor had the right to continue litigation if the Federal Court never had jurisdiction over the creditor to grant any relieve for Ms. Real.

8. Due to the fact that (1) the State Court has concurrent jurisdiction with U.S. Bankruptcy Court flowing from the failure of Defendant Lilly J. Real to schedule the debt that arises under §523(a)(6) for willful and malicious injury by the debtor to another entity; (2) that substantial part of events occurred in the county of Miami Dade; and (3) that all parties involved in the events were residents of Miami Dade when the events happened, the Creditor filed a "Motion for Declaratory Judgment" in Miami Dade County before proceeding with further litigation.

9. Ms. Real discharge in bankruptcy court was granted under 11 U.S.C. §727

## § 2.PERSONAL JURISDICTION - THE LAW

### A. PERSONAL JURISDICTION UNDER FED. R. BANKR. P. 7004 AND FED. R. CIV. P. 4, DEMANDS FOR PROPER PROCESS OF SERVICE FOR FEDERAL COURTS TO STABLISH PERSONAL JURISDICTION.

10. Under Fed. R. Bankr. P. 7004, the requirements for service of process are quite basic. Fed. R. Bankr. P. 7004(b)(1).

> Service by First Class Mail. Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

> Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the *individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.*

11. Moreover, the court in DuVoisin v. Arrington (In re S. Indus. Banking Corp.), 205 B.R. 525, 531-32 (E.D. Tenn. 1996) held that "service was made by mail addressed to a temporary residence, not to the defendant/appellant's dwelling house or usual place of abode. [Consequently,] [e]ven if the Spring City trailer park was for a time the defendant/appellant's dwelling house or usual place of abode, the uncontroverted evidence in the record is that Mr. Pressley moved away from the trailer park before the commencement of the adversary proceeding; the Spring City location was neither a temporary residence nor a dwelling house or usual place of abode of Mr.

Pressley when this service by mail was attempted." *See* <u>First Nat'l Bank & Trust Co. of Tulsa v.</u>

<u>Ingerton,</u> 207 F.2d 793, 795 (10th Cir. 1953) (finding that service upon a defendant at a house she

rented for her daughter was ineffective because the evidence indicated her residence was at a hotel

where she received her mail and where her personal belongings and furniture were located);

<u>Ultrasonics, Inc. v. Eisberg (In re Ultrasonics, Inc.),</u> 269 B.R. 856, 861 (Bankr. D. Id.

2001)(finding that an address where service was attempted was not the defendant's dwelling house

or usual place of abode because no evidence indicated that the defendant lived at the address on

either a sporadic or regular basis); <u>Tropin v. Weitzman (In re Premium Sales Corp.),</u> 182 B.R. 349,

354 (Bankr. S.D. Fla. 1995) (upholding service upon the defendant where there was a reasonable

nexus between him and the condominium where the service was effected because the defendant

regularly stayed in the condominium for one to four week periods sporadically throughout each

year.)

### PERSONAL JURISDICTION - ANALYSIS

12. In this case, Ms. Real failed to provide proper notice of the procedure when she never

served Mr. Polo with proper notice, including with it the summon and complaint. Thereafter, she

filed an amendment to the schedules and never provided Mr. Polo with the amended schedules. To

prevent notice, Ms. Real filed a Notice of suggestion of Bankruptcy with the Miami Dade 11th

Circuit Court, but never serve the amended schedules. Consequently, the failure to provide notice

prevents the Federal Court to exercise personal jurisdiction over Mr. Polo in violation of due

process of law, and earlier judgment shall not be binding.

13. In regards to the Motion for Sanctions, Ms. Real's attorney sent the motion for sanctions

via certified mail to 1475 SW 8th St Apt 411, Miami, Fl. 33135 ("My Mother's House.") The last

time I was temporarily living in this address was in May 2012 until February 2013, and I have

reside in 9619 Fontainebleau Blvd. Apt 317, Miami Fl. 33172 ("My House.") since February 2013

to the best of my recollection. Furthermore, I have resided in this address with my current wife and my children, whom I married in January 2013. Additionally, I do not keep any belongings in My Mother's House, I do not have a room in that house and even less I conduct any business activity from my mother's house. Ms. Real, was the Guardian Ad Litem in a family court in which she visits my house and she knows precisely where I live. Ms. Real was in charge of evaluating the conditions of my house and she was even inside my house and my children's room. Consequently, she knows my place of abode is in a different address. I do use the address of my mother for receiving mailing which I am already receiving via electronic delivery, and just because the mailbox is more secured in that location and because I receive all motions on those cases electronically as soon as those are filed. I pick up my mail once a month or every two months, unless my brother comes to my house to deliver this to me, which does not occur to often. I am currently a full time Law Student and I do not have any profession or Business which I am practicing. Therefore, the house of my mother is not a regular place of business. The companies I used to own are both closed for Administrative Dissolution and have been inactive since approximately the end of 2012 to beginning of 2013. Moreover, those two corporation have a principal address of 9619 Fontainebleau Blvd. Apt 317, Miami FL. 33172, which is the address last used for filling annual reports for the company. For all reasons mentioned above my place of abode is not 1475 SW 8th St Apt 411, Miami FL. 33136, the address Ms. Real's attorney listed in his certificate of service as my regular place of business. Consequently, the personal service of process is defective.

14.     Consequently, the Court did not have personal Jurisdiction over me when it issued the release of debts for Ms. Real. Additionally, Ms. Real attorney failed to exercise proper process of service when he did not serve me with the Summon and Complaint. Neither did he stablish

personal jurisdiction when he did not deliver the motion at 9619 Fontainebleau Blvd. Apt 317, Miami FL. 33172 where I have resided for over four years now.

## § 3.JURISDICTIONAL PROTECTION OF § 523(c)- THE LAW

### B. DEBTOR THAT FAILS TO LIST A CREDITOR WHO HOLDS A DEBT OF A KIND SPECIFIED IN SECTION 523(A)(3)(B) LOSES THE JURISDICTIONAL PROTECTIONS OF SECTION 523(C).

15. The state court has concurrent jurisdiction with U.S. Bankruptcy Court flowing from the failure of Defendant Lilly J. Real to schedule the debt that arised under §523(a)(6) for willful and malicious injury by the debtor to another entity. See In re Massa, 217 B.R. 412, 420 (Bankr. W.D.N.Y. 1998) (holding that "[a] debtor who fails to list a creditor who holds a debt of a kind specified in Section 523(a)(3)(B) loses the jurisdictional protections of Section 523(c)); See also In re Massa, 217 B.R. 412, 419 (Bankr. W.D.N.Y. 1998) (stating that "not only can a determination of nondischargeability flowing from Section 523(a)(3)(B) be made by the bankruptcy court, it can also be made by an appropriate state court which has concurrent jurisdiction to make such a Section 523(a)(3)(B) determination."); Keenom v All Am. Mktg. (In re Keenom) (1999, BC MD Ga) 231 BR 116 (holding that "[s]tate court can decide whether debt is discharged under 11 USCS § 523(a)(3)(B) as statutory scheme provides that state court can decide whether creditor has colorable or viable claim that debt is of kind specified in 11 USCS § 523(a)(2), (4), or (6) without intruding on exclusive jurisdiction of bankruptcy courts."

### JURISDICTIONAL PROTECTION ANALYSIS

16. In this case Ms. Real directly participated in tortuous acts against Mr. Polo. The causes of actions that Mr. Polo brought against Ms. Real include but are not limited to, (1)Intentional Interference with Custody of Minor Children; and (2) intentional infliction of severe emotional distress. Therefore, the claim arose under §523(a)(6) for willful and malicious injury by the debtor to Mr. Polo. Hence, this is the kind of injury that §523(a)(6). §523(a)(3)(B) clearly stays that when

a debtor fails to notice a creditor of those listed under §523(a)(2), (4) or (6) the debt is not discharged, and that is precisely what Ms. Real did in this case. She intentionally did not include Mr. Polo because Mr. Polo had sent her an email telling her he would not proceed further in civil or criminal court, and she was afraid that Mr. Polo could had changed his mind and proceed to file a claim if he was listed as a creditor. It was clear for Ms. Real that Mr. Polo was a "*Reasonable Ascertainable Plaintiff.*" and knew that her co-conspirators were still causing damages to Mr. Polo. Therefore, it was in her best interest to stay away from Mr. Polo and not to list him as a *Reasonable Ascertainable Plaintiff.* Nevertheless, the question for the court to answer is whether Mr. Polo was a *Reasonable Ascertainable Plaintiff.* Clear, Mr. Polo was since the moment he acknowledge he had the right to take Ms. Real to civil and criminal court, and he was not doing so due to his religious conventions. Nevertheless, upon continuance of harassment by Ms. Reals co-conspirators it was ascertainable to Ms. Real that Mr. Polo was a *Reasonable Ascertainable Plaintiff.* Moreover, only taxes and death are for sure in this life. It was unreasonable for Ms. Real to think that she intentionally created harm on Mr. Polo and that Mr. Polo was never going to change his mind.

17. On May 26, 2015, before Ms. Real had filed for bankruptcy, Mr. Polo filed a Motion to Vacate the Family judgement, in the family case, based on Fraud on the Court performed by Ms. Real. Ms. Real was made aware that Mr. Polo had evidence to demonstrate that she had committed fraud on the court. *See* EXHIBIT B. Moreover, Ms. Real, as a knowledgeable lawyer, with 20 years of experience, a license to practice law, and formal legal education, knew or should have known that it was reasonable that Mr. Polo had multiple causes of action against her, which he could have pursued at any time. No only when Mr. Polo filed a motion to vacate accusing Ms. Real of committing fraud on the court, but also when she consciously, willingly and with premeditation interfered with the custody of two minor children despite knowing that her actions were not supported by then existing law and neither by a reasonable standard. Thereafter, on

August 2015, the Plaintiff in this case began Law School, and all other co-conspirators in this case knew this. Therefore, she knew the chances of getting a cause of action against her were increased once the Plaintiff had started law school. Therefore, she had another good reason to believe that the Plaintiff in this case was a *Reasonable Ascertainable Creditor*.

18. After the Creditor in this case filed a motion to vacate on filed on May 26, 2015, accusing Ms. Real of committing fraud on the court to interfere with the custody of the Plaintiff, there was no much reasonably diligent efforts that Ms. Real had to apply to known that the Plaintiff in this case was a *Reasonable Ascertainable Creditor* since the same instant in which she decided to collude with the other defendants to bring about harm to the Plaintiff in this case, and take steps in furtherance of the conspiracy they had. *See* Patti v. Colanduoni (In re Patti), 449 B.R. 224, 226 (Bankr. M.D. Pa. 2011) (holding that "[a]s reasonably ascertainable creditors, they could also be categorized as 'known creditors' entitled to notice of the bankruptcy." Patti v. Colanduoni (In re Patti), 449 B.R. 224, 226 (Bankr. M.D. Pa. 2011).

19. As much as it is reasonable ascertainable that battering, killing, or acting illegally against property or person creates a *Reasonable Ascertainable Creditor*, it was reasonable for Ms. Real to know that she had created a *Reasonable Ascertainable Creditor* by intentionally acting against the best interest of the Creditor and his children. Consequently, Ms. Real was aware since the moment that she intentionally acted against the Mr. Polo and his children, that Mr. Polo and his children were all *Reasonable Ascertainable Creditor*. Ms. Real failed to name the Plaintiff in this case a creditor and this does not discharge the debt under 11 U.S.C. §727 in accordance to 11 U.S.C. §523(a)(B). Therefore, Creditor shall be able to continue his case in the state court.

## § 4. DECLARATORY JUDGMENT - THE LAW

20. Statutory law in Florida specifically provided jurisdiction to the courts to declare rights, status, and other equitable or legal relations between parties, whether or not further relief is or could be claimed. § 86.011, Fla. Stat. (2014). A court can make either a negative or affirmative declaration. Id. The courts may make declaratory judgments on the existence or nonexistence of any immunity, power, privilege, or right, or any fact upon which the same may depend, whether it exists now or will arise in the future. § 86.011(1)–(2), Fla. Stat. (2014)

      a.  The goals of the Declaratory Judgment Act include: (i) relieving litigants of the common-law rule that a declaration of rights cannot be adjudicated unless the right has already been violated; (ii) rendering practical help in ending controversies which have not reached a stage where other legal relief is immediately available; (iii) settling uncertainties with respect to rights, status, or other equitable and legal relationships; (iv) avoiding multiple suits; and (v) providing clarity where technical or social changes have placed in doubt one's rights, immunities, status, or privileges. Kendrick v. Everheart, 390 So. 2d 53, 59 (Fla. 1980); Roth v. The Charter Club, Inc., 952 So. 2d 1206, 1207 (Fla. 3d DCA 2007) (holding complaint for declaratory judgment on proper interpretation of statute was sustainable); Jackson v. Fed. Ins. Co., 643 So. 2d 56, 58 (Fla. 4th DCA 1994) (finding justiciable controversy on entitlement to disability benefits after training).

      b.  To properly state a sustainable cause of action for declaratory relief, a complainant must allege that (1) there is a bona fide dispute between the parties; (2) the complainant has a justiciable question as to the existence or non-existence of some right, status, immunity, power, or privilege, or some fact upon which their existence may depend; (3) the complainant is in doubt as to the right, status, immunity, power,

or privilege; and (4) there is a bona fide, actual, and present need for the declaration. May v. Holley, 59 So. 2d 636 (Fla. 1952); Romo v. Amedex Ins. Co., 930 So. 2d 643, 648 (Fla. 3d DCA 2006). The complainant must also show that the antagonistic and adverse interests are all before the court, and that the relief sought is not merely the giving of legal advice by the courts or the answers to questions propounded from sheer curiosity. City of Sarasota v. Mikos, 613 So. 2d 566, 567 (Fla. 2d DCA 1993).

c. In determining sufficiency the test is "*only*" whether there is a bona fide dispute and the plaintiff is entitled to a declaration of rights. Rigby, 505 So. 2d. at 600; Verdecia v. Am. Risk Assur. Co., 494 So. 2d 294, 294 (Fla. 3d DCA 1986) (reversing dismissal of complaint for declaratory relief); Tavares v. Allstate Ins. Co., 342 So. 2d 551, 553 (Fla. 3d DCA 1977) (holding that a dispute over contract coverage sustained an action for declaratory relief).

## DECLARATORY JUDGMENT - ANALYSIS

21. In this case Mr. Polo only objected to the dischargeability of the debt of Ms. Real by requesting the state court to issue a declaratory judgment about the right that Mr. Polo had under the law to continue with the suit and whether the failure of Ms. Real Attorney to serve Mr. Polo with service of process had made any previously decision made by this Court void as a matter of law. As explained in previous section three (3), both courts have jurisdiction to determine the dischargeability of a case in which Ms. Real failed to list a Reasonable ascertainable debtor in time for that debtor to have his side hear and proper opportunity to bring an adversarial proceeding against Ms. Real. *See* the law under §3. Consequently, bringing a cause of action to get a pronouncement about my rights to continue litigation is not an act of continuing litigation against

Ms. Real, but an act to get a declaration about the rights of Mr. Polo and those of Ms. Real, which is in accordance with existing statutory and case law.

### § 5.REQUEST FOR SPECIAL APPEARANCE

22. Mr. Polo respectfully request this court to allow Mr. Polo to come for an special appearance without losing his right to process of service, with the limited objective of discussing this objection to the Debtor's Request for Sanctions," by challenging the jurisdiction of the court.

### § 6.PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein, Mr. Polo respectfully requests that this Court enter an order granting the relief requested herein and such other and further relief as the Court deems just and proper including but not limit:

1. Relief from discharge of debt, which was enter without the court having personal jurisdiction;

2. Dismiss the motion for sanctions for improper (defective) process of service and for inconvenient forum/improper venue, where no all the involved parties reside; and

3. Due to the fact that the "Motion for Sanctions" was made to harass, to needlessly increase the cost of litigation to Creditor in the State case, to cause improper delay in aforementioned case in state court, and the claims, defenses, other legal contentions contained in the "Motion for Sanctions" are not warranted by existing law; therefore, those are frivolous argument. The creditor, Mr. Polo, is being forced to hire a local attorney license to practice in Middle District of Florid. Mr. Polo will have to travel to the hearing and would have to spend reasonable traveling and accommodation to attend the hearing. Additionally, Mr. Polo would have to hire a professional Court Reporter to protect his rights to an appeal. Hence, Mr. Polo requests this Court to grant attorney's

fees, traveling expenses, and reasonable Court Reporter fees enforceable against Debtor's attorney in accordance with Fed. R. Civ. P. 11(c) for violation of Fed. R. Civ. P. 11(b).

Respectfully Submitted,

**FRANK E. POLO SR.**

9619 Fontainebleau Blvd. Apt 317
Miami, FL. 33172
Phone: 305-901-3360

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished to the following attorney at the following address: EDWARD P. JACKSON, 255 N. Liberty Street, First Floor, Jacksonville, FL 32202, by First Class U.S. Mail this 31st day of October 2017.

9619 Fontainebleau Blvd. Apt 317
Miami, FL. 33172
Phone: 305-901-3360

# EXHIBIT-A

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA
CASE NO. 2017-3553-CA-01
JUDICIAL DIVISION: 34
JUDGE: RODNEY SMITH

FRANK E. POLO,
Plaintiff,

v.

LILLI[sic] J. REAL[1], GUSTAVO J. LOSA,
STEPHANIE GRANDA, THE LAW OFFICE OF
GRANDA & ASSOCIATE[sic]; MERLIN
HERNANDEZ; RANDOLPH MARTINEZ;
MILDRED HERNANDEZ ITURRALDE;
EMILIA ITURRALDE; REGINO PEREZ;
and RAUL GUERRERO,
Defendants.

_____/

## DEFENDANT, LILLY J. REAL'S AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTION FOR DECLARATORY JUDGMENT

STATE OF FLORIDA
COUNTY OF DUVAL

SWORN TO AND SUBSCRIBED UNDER OATH, THE AFFIANT HEREBY STATES AS
FOLLOWS:

1. Affiant states that Affiant is over eighteen (18) years of age and Sui Juris.
2. Affiant states that her legal name is Lilly Josephine Real and was formerly known as Lilliana Maria Real("Affiant") and Affiant states that Affiant has personal knowledge of the facts set forth herein.
3. Affiant is a member in good standing with The Florida Bar since April 26,1996 with a brief voluntary retirement from December 1, 2015 to April 19, 2016 for health reasons.
4. Affiant is a Florida Supreme Court Certified Family Mediator since 2009 to the present.
5. Affiant is currently employed at the Duval County Unified Courthouse as a full-time staff family mediator and has employed there since August 1, 2016.
6. At the end of June 2016, Affiant moved herself, her elderly mother and two dogs to Jacksonville, Florida prior to commencing employment, but after receiving the job offer as a mediator in the Duval County Unified Courthouse.
7. Affiant, through Bankruptcy counsel, Edward Jackson, Esq., filed for personal Chapter 7 bankruptcy in October 2016 in the Middle District of Florida (Jacksonville Division) under Case No. 16-03913-JAF ("Affiant's Chapter 7 Bankruptcy") due to a Final Judgment in a case against her by Mortgage Guaranty Insurance Company ("MGIC") in Miami-Dade County, Florida under Case No. 2014-23053 CA 01 among many other debts including dischargeable and non-dischargeable debts.
8. On or about February 15, 2017 (after the trustee had previously found no assets to be distributed) the Bankruptcy Judge granted the Affiant's discharge on the dischargeable

---

[1] Affiant Lilly J. Real's name was misspelled by Plaintiff as "Lilli" Real. Affiant was formerly known as Lilliana Maria Real but Affiant legally changed her name to Lilly Josephine Real in March 2016 which is public record under the case style, In Re: Name Change of Lilliana Maria Real, Case number 2016-4815 (FC 04).

debts in the Affiant's Chapter 7 Bankruptcy; Affiant currently still owes $429,660.53 in defaulted student loans; the IRS discharged tax years 2010, 2011 and 2012 for a tax lien release of $78,988.88, but the IRS did not discharge the tax years 2013, 2014 and 2015 and the Affiant has a recent IRS lien filed against Affiant's name in St. John's County[2] where she currently resides in the amount of $91,944.84.

9.  Affiant's bankruptcy was caused by a litigation matter that was filed in 2014 in Houston, Texas in Federal Court against Affiant's former clients and included Affiant and although Affiant was eventually dismissed from the litigation, the lawsuit caused a downward spiral in Affiant's finances due to Affiant having to pay large sums of attorneys' fees to Affiant's Houston, Texas attorney.

10. Affiant did not include Plaintiff, Frank Polo Sr ("Plaintiff") in Affiant's Chapter 7 Bankruptcy because Affiant was not aware that Plaintiff would be filing a lawsuit against Affiant especially given that Plaintiff had specifically stated he would not sue Affiant in a email attached hereto and mentioned in paragraph 11 below.

11. Affiant received an email from the Plaintiff, June 16, 2015 in reply to Affiant filing a Response regarding the same allegations set forth in the matter and Plaintiff, in said email stated that he would not sue affiant civilly. *See attached Exhibit A*, the email received by Affiant from Plaintiff on **June 16, 2015** stating as follows,
"Ms. Real, Once again you are overreacting. **I do not have any intention to report you to The Florida Bar, neither to proceed against you criminally nor in civil court.** Just get it right, I am not the kind of person who would like to do harm to anyone. My religion conventions do not allow me to do wrong, just for doing wrong. Neither do I like people to do wrong to me. Nevertheless, if you want to bring a court reporter to the hearing on Jun[sic] 23rd and keep pushing this further, you can do so. I will based[sic] the case of the fact[sic] of the matter and I will object to any other irrelevant statements you may want to enter. I will not distract the court[sic] attention to any other matter than the fact that the pictures had dates and some even faces. Respectfully, Frank Polo Sr."

12. Affiant had no communication with Plaintiff in 2016 prior to filing for bankruptcy or prior to the 341 meeting of creditors.

13. On January 4, 2017 (after the bankruptcy had been filed and the meeting of creditors had taken place), Plaintiff reached out via email to Affiant to confirm Affiant's e-mail address and during that email exchange, Plaintiff stated that if he would need her to testify at a hearing in Miami, he would send a subpoena to her attorney, but did not state at any time he was suing Affiant. See Exhibit B attached hereto.

14. Later in January 2017, the Plaintiff sent an email to Affiant attaching a complaint directed to The Florida Bar against Affiant which was over a 100 pages long.

15. Subsequently, Affiant contacted The Florida Bar and was informed that the Plaintiff's complaint had been returned to him because it exceeded the page limit.

16. On February 22, 2017, Affiant received a letter from a law firm in South Florida offering their services in defense of a lawsuit filed against Affiant in South Florida.

17. Upon receipt of the solicitation letter, Affiant searched the public records in Miami-Dade County, Florida and discovered that Plaintiff had filed suit against Affiant among others.

18. Shortly thereafter, Affiant contacted the Jacksonville Sherriff's Office to ask about picking up the Complaint and Summons to voluntary be served at the station.

19. In early March 2017, the Affiant picked up the Complaint and Summons filed against her by the Plaintiff at the Jacksonville Sherriff's Office.

20. During the remainder of March 2017, the Affiant had responses filed through counsel in this matter.

---

[2] St. John's County is a county immediately adjacent to Duval County.

21. At the end of March 2017, the Plaintiff was involved in settlement negotiations with all Affiant and other Defendants which were not successful.

22. Settlement negotiations at the end of March, 2017, failed to result in a settlement of the matter.

23. On April 3, 2017, Affiant, through bankruptcy counsel, added Plaintiff as a creditor in the Affiant's Chapter 7 bankruptcy case and filed a Suggestion of Bankruptcy in this matter.

24. Plaintiff 's appeal of the family case which is the subject matter of this litigation was affirmed "per curiam" by Third District Court of Appeal in a filed Opinion on March 22, 2017 and Plaintiff's request for a rehearing and for a written opinion were both denied. See the Opinion which was printed by Affiant from the Third District Court of Appeal website along with the docket under Case 3D16-720, Lower Tribunal No. 12-17787 ("Plaintiff's Appeal") attached as Composite Exhibit C.

25. Affiant was the Guardian Ad Litem in the underlying family law case which Plaintiff appealed in Case 3D16-720.

26. The Third District Court of Appeal cited the following case in the March 22, 2017 Per Curiam affirmed opinion filed in Plaintiff's Appeal, *Applegate v. Barnett Bank of Tallahassee*, 377 So.2d 1150, (Fla 1979).

27. Affiant has reviewed the case cited by the Third District Court of Appeal which states in pertinent part, "[e]ven when based on erroneous reasoning, a conclusion or decision of a trial court will generally be affirmed if the evidence or an alternate theory supports it." *See Applegate*, 377 So. 2d at 1152.

FURTHER AFFIANT SAYETH NAUGHT.

LILLY JOSEPHINE REAL
f/k/a LILLIANA MARIA REAL

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS ___ DAY OF SEPTEMBER, 2017, LILLY JOSEPHINE REAL WHO IS ___ PERSONALLY KNOWN TO ME OR WHO PRODUCED _____ AS IDENTIFICATION WHO SIGNED THIS AFFIDAVIT IN MY PRESENCE.

NOTARY PUBLIC – STATE OF FLORIDA
DUVAL COUNTY
MY COMMISSION EXPIRES: _____

CASSANDRA JENNINGS
Commission # FF 960350
Expires April 1, 2020
Bonded Thru Troy Fain Insurance 800-385-7019

**EXHIBIT-B**

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI DADE COUNTY, FLORIDA
(Family Division)

MERLIN HERNANDEZ
Petitioner,

VS.                                    Case No. 2012-017787-FC-04
                                              (28)

FRANK E. POLO
Respondent Pro-Se

## RESPONDENT'S MOTION TO VACATE FINAL JUDGMENT

    **Comes** now the respondent, Frank Polo, and hereby files their motion to vacate final judgment, pursuant to Rule 1.540(b) Fla. R. Civ. P., states:

    1.  Florida Rule of Civil Procedure 1.540(b) provides in pertinent part: On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, decree, order, or proceeding for the following reasons:... (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial or rehearing (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) that the judgment or decree is void; This rule does not limit the power of a court to enter in an independent action to relieve a party from a judgment, decree, order, or proceeding or to set aside a judgment or decree for fraud upon the court.

    2.  During the trial on February 26th, 2014 the father testified that he respectfully disagreed with the testimony of the guardian ad litem, whom had stated that the father sent pictures of the children with no face and no dates with the intention of building a case against the mother. The father testified under oath that the pictures had date and even some had faces. The father added that this statement of the guardian ad litem was false and misleading due to the fact that his true concern was the wellbeing of his children and that in an effort to protect this, he trusted the guardian ad litem with his concerns.

    3.  The testimony of the guardian ad litem was a confirmation of the report she had filed the day before the trial against FL Rule 61.403 (5) which establishes that "The report must be filed and served on all parties at least 20 days prior to the hearing at which it will be presented..." This undoubtedly created surprise at time of hearing, due to the false testimony of the guardian for which the respondent was not ready to obtain the needed evidence to disprove the testimony of the guardian; nevertheless, the father offered his testimony as a clear objection to the report filed by the guardian ad litem. The guardian blamed the late submission of report to a letter the Father sent to the guardian clearly frustrated by what the father had already perceived as a bias attitude of the guardian against the father. Such a letter was found by this court not to represent any expression of intention to harm the children, the mother or himself after having a hearing promoted by the guardian ad litem to get the father's timesharing suspended.

FILED
MAY 26 2015
HARVEY RUVIN
CLERK

4.  In the report filed by the GAL, Mrs. Real stated she was worry about the email in which the father "...mentioned being killed inside and never seeing Children again after tomorrow in caps.." to justify her unreasonable suspension of a second visit to the father's house and the late delivery of the report on February 25th 2014. The letter never had none of these words in "caps"; consequently, this is just one more misrepresentation of the material facts presented to this court by the guardian ad litem in her report.

5.  The father issue a subpoena to Microsoft Online Services after realizing that the emails with the attachments sent to the guardian ad litem, which is the evidence needed to disprove the false statements made by the guardian ad litem, were residing in a server wholly owned and operated by Microsoft Corporation. Despite the lengthy time that Microsoft took to provide such evidence, the evidence is now available to present to this court. This evidence will show the court that in fact the pictures sent by the respondent to the guardian ad litem, not only had dates, but also some of them had faces of the children.

6.  The father sent email, after the trial and before the final judgment was issued (On May 8th 2014), expressing to the guardian ad litem how disappointed he was at her report and provided the guardian with copies of those emails with picture which the guardian said they didn't have dates nor faces of the children. Nevertheless, the guardian failed to adopt any reasonable remedial measures, including, if necessary, disclosure to the tribunal.

7.  As previously stated by the court, at the hearing held on October 20th, 2014, the court did not find any evidence that the father was building a case against the mother; nevertheless, the court based its ruling on the testimony (allegations) set forth by the guardian ad litem. Consequently, the respondent feels that the fact that the evidence in his possession shows proof that the pictures sent the guardian ad litem have pictures and some of them even have faces, is clear evidence of the misrepresentation of the actual facts by the guardian ad litem, which leads the father to request this motion to vacate judgment.

8.  It is the position of the respondent that if the court were to allow the petitioner to have the majority of time-sharing with the children based on the conflicting and misrepresented testimony of the guardian ad litem, the court would open the door to incredible harm to other children which their parents, in an attempt to protect themselves from the guardian ad litem, would not report their concerns to the guardian ad litem in other litigations; thereby affecting the protection of the best interest of the children.

9.  If the court were to allow the petitioner in this case to have majority of time-sharing with the children in light of serious misrepresentation and fraud upon the court, it would result in a major injustice to the Respondent. The Court cannot be in a position of enabling the guardian ad litem to commit material misrepresentation or felony crimes.

WHEREFORE, Respondent/Father, FRANK E. POLO, respectfully requests this court to grant Respondent's motion for vacating judgment and that this Court award him the following relief:

1.  Issue a new final judgment which will reflect:

A) New timesharing determination granting the respondent 50/50 timesharing with the children as requested by the father during mediation and in accordance with Fla. Sta. 61.13, disregarding the testimony and final report filed by the guardian ad litem, whom has been found to have concealed material facts. Doing this would be consistent with providing justice and ensuring equity between the parties.

B) Grant the father the right to provide Daycare for the children in the event he is unable to pay for costly daycare services, which was denied previously based also on the testimony of the guardian ad litem.

C) Issue order granting the father the right of first refusal which was agreed by both parents to comply with during co-parenting classes, but the mother refuses to comply with; therefore, it will have to be enforce by judicial order as many other previous issues resolved by this court due to the refusal of the mother to do what is in the best interest of the children.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was sent via e-mail to Stephanie Granda, Esq, counsel for the Petitioner/Mother, at sg@grandalaw.com., on this Tuesday, May 26th, 2015.

To: Stephany Granda
Attorney for Petitioner
E-Mail: sg@grandalaw.com

By: _____
Frank Polo Sr.
1475 SW 8th St Apt 411
Miami, FL. 33135
Telephone: 786-608-9657

## IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
## IN AND FOR MIAMI DADE COUNTY, FLORIDA

**FRANK E. POLO**
                                        **CASE NO. 2017-003553-CA-01**
                                        **JUDICIAL DIVISION: 34**
                                        **JUDGE: RODNEY SMITH**

     Plaintiff,

  vs.

**LILLY J. REAL; GUSTAVO J.
LOSA; STEPHANIE GRANDA;
THE LAW OFFICE OF
GRANDA & ASSOCIATE;
MERLIN HERNANDEZ;
RANDOLPH MARTINEZ;
MILDRED HERNANDEZ
ITURRALDE; EMILIA
ITURRALDE; REGINO
PEREZ; and RAUL GUERRERO.**
     Defendants.

_____/

## NOTICE OF TEMPORARY INTENT NOT TO PROSECUTE

Plaintiff, **FRANK E. POLO**, files this *Notice of Intent not to Prosecute* and states as
follows:

1.  Plaintiff understand that this case is in inactive statute against Ms. Lilly J. Real
("Ms. Real.") Therefore, the filling of the Second Amended Complaint and the objection to Ms.
Stephany's Granda motion to dismiss is not done with the intent of further prosecute Ms. Real, but
with the intent of fixing the mistakes in the complaint and objecting to the motion filed by other
defendant.

2.  Moreover, it is the honest understanding of Plaintiff that the stay protection extends
to Ms. Real only. Consequently, discovery conducted by the Plaintiff will be limited to this

Polo v. Real, et al.
CASE NO. 2017-003553-CA-01

information concerning other defendants until Plaintiff obtains a relief from automatic stay from

the Federal court.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was sent via e-filing to the following individuals, on this 5 day of July, 2017. The motion will be mail to those that have not provided electronic means of communication.

To: Lourdes Maria Fernandez FL127418
Defendant's Co-Counsel
Via: E-Filing

To: Gregory Fidel Betancourt FL143669
Defendant's Co-Counsel
Via: E-Filing

Gustavo J. Losa, Esq.
Defendant
Via: E-Mail

Stephanie Granda Fernandez, Esq.
Defendant
Via: E-Mail

Law Office of Granda & Associates, P.A.
Defendant
Via: E-Mail

Merlin Hernandez
Defendant
Via: E-Mail

Randolph Martinez
15229 SW 39th Terrace
Miami, Florida 33185

By: _____/s/_____
Frank Polo Sr.
1475 SW 8th St Apt 411
Miami, FL. 33135
Telephone: 305-901-3360
Email: Frank.Polo@msn.com

Mildred Hernandez Iturralde
7040 SW 24th Street
Apt 301
Miami, Florida 33155

Emilia Iturralde
7040 SW 24th Street
Apt 301
Miami, Florida 33155

Regino Perez
7040 SW 24th Street
Apt 301
Miami, Florida 33155

Raul Guerrero
7040 SW 24th Street
Apt 103
Miami, Florida 33155

**EXHIBIT-D**

IN THE CIRCUIT/COUNTY COURT OF THE ———— JUDICIAL CIRCUIT
IN AND FOR ———— COUNTY, FLORIDA

Merlin Hernandez

CASE NO. 2012-017287-FC28

Plaintiff/Petitioner or In the Interest Of

vs.

James DB Co

Defendant/Respondent

## APPLICATION FOR DETERMINATION OF CIVIL INDIGENT STATUS

**Notice to Applicant:** If you qualify for civil indigence you must enroll in the clerk's office payment plan and pay a one-time administrative fee of $25.00. This fee shall not be charged for Dependency or Chapter 39 Termination of Parental Rights actions.

1. I have __2__ dependents. *(include only those persons you list on your U.S. income tax return.)*
Are you Married? (Yes) No  Does your Spouse Work?...Yes (No)  Annual Spouse income? $_____

2. I have a net income of $ __0.00__ paid  weekly  every two weeks  semi-monthly  monthly  yearly  other

*(Net income is your total income including salary, wages, bonuses, commissions, allowances, overtime, tips and similar payments, minus deductions required by law and other court-ordered payments such as child support.)*

3. I have other income paid  weekly  every two weeks  semi-monthly  monthly  yearly  other _____.
*(Circle "Yes" and fill in the amount if you have this kind of income, otherwise circle "No")*

| | | | | |
|---|---|---|---|---|
| Second Job .......................Yes $ _____ (No) | Veterans' benefits.......................Yes $ _____ (No) |
| Social Security benefits | Workers compensation.................Yes $ _____ (No) |
| For you.......................Yes $ _____ (No) | Income from absent family members ...Yes $ _____ (No) |
| For child(ren) .............Yes $ _____ (No) | Stocks/bonds.......................Yes $ _____ (No) |
| Unemployment compensation .......Yes $ _____ (No) | Rental income.......................Yes $ _____ (No) |
| Union payments .......................Yes $ _____ (No) | Dividends or interest.................Yes $ _____ (No) |
| Retirement/pensions ..................Yes $ _____ (No) | Other kinds of income not on the list....Yes $ _____ (No) |
| Trusts .......................Yes $ _____ (No) | Gifts .......................Yes $ _____ (No) |

I understand that I will be required to make payments for fees and costs to the clerk in accordance with §57.082(5), Florida Statutes, as provided by law, although I may agree to pay more if I choose to do so.

4. I have other assets: *(Circle "yes" and fill in the value of the property, otherwise circle "No")*

| | | | |
|---|---|---|---|
| Cash.......................Yes $ 17.32 (No) | Savings account.......................Yes $ _____ (No) |
| Bank account(s).......................Yes $ 20.22 (No) | Stocks/bonds.......................Yes $ _____ (No) |
| Certificates of deposit or | Homestead Real Property*...........Yes $ _____ (No) |
| money market accounts.............Yes $ _____ (No) | Motor Vehicle*.......................Yes $ _____ (No) |
| Boats*.......................Yes $ _____ (No) | Non-homestead real property/real estate* ...Yes $ _____ (No) |

*show loans on these assets in paragraph 5

Check one: I  DO  DO NOT expect to receive more assets in the near future. The asset is_____.

5. I have total liabilities and debts of $ 2658.00 as follows: Motor Vehicle $_____, Home $ 1500, Other Real Property $_____, Child Support paid direct $_____, Credit Cards $_____, Medical Bills $_____, Cost of medicines (monthly) $_____
Other $ 1158.00

6. I have a private lawyer in this case............ Yes (No)

A person who knowingly provides false information to the clerk or the court in seeking a determination of indigent status under s. 57.082, F.S. commits a misdemeanor of the first degree, punishable as provided in s.775.082, F.S. or s. 775.083, F.S. I attest that the information I have provided on this application is true and accurate to the best of my knowledge.

Signed this __7__ day of __Feb__ , 20__17__

02/08/77
Date of Birth

H400265726480
Driver's License or ID Number

14175 SW 84th St #411
Address, P O Address, Street, City, State, Zip Code

Miami FL 33135

Signature of Applicant for Indigent Status
Print Full Legal Name  James DB Co
Phone Number: 305 901 3360

**CLERK'S DETERMINATION**

Based on the information in this Application, I have determined the applicant to be ( ) Indigent ( ) Not Indigent, according to s.
57.082, F.S.

Dated this ___7___ day of ___Feb___, 20 _17_

Clerk of the Circuit Court by _____

This form was completed with the assistance of: _____
                                                Clerk/Deputy Clerk/Other authorized person.

**APPLICANTS FOUND NOT TO BE INDIGENT MAY SEEK REVIEW BY A JUDGE BY ASKING FOR A HEARING TIME.**
**THERE IS NO FEE FOR THIS REVIEW.**
Sign here if you want the judge to review the clerk's decision _____

Bryan Simpson U.S. Courthouse
300 North Hogan Street
Jacksonville, Florida 3
Attn: Clerk of Courts

Tuesday, October 31, 2017

Dear Sir or Madam,

The attached motion to dismiss/objection is submitted for filing. I have attached a copy of my
State issued firearm permit, because I have lost my driver license and I have to get a
replacement. Please, let me know if this information is sufficient to file the motion.

Please, notice that EXHIBIT D is the declaration of indigent status by Miami Dade Clerk of
Courts. Please, inform me if you need a new application.

Respectfully Submitted,

FRANK E. POLO SR.


9619 Fontainebleau Blvd. Apt 317
Miami, FL. 33172
Phone: 305-901-3360
Email: Frank.Polo@msn.com