United States Bankruptcy Court
Middle District of Florida

In re:  
Lilly Josephine Real  
    Debtor

Case No. 16-03913-JAF  
Chapter 7

## CERTIFICATE OF NOTICE

District/off: 113A-3      User: pcathy      Page 1 of 1      Date Rcvd: Apr 30, 2018  
                  Form ID: pdfdoc    Total Noticed: 3

Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on May 02, 2018.
```
db             +Lilly Josephine Real,    3550 NW 83rd Avenue, #709,    Doral, FL 33122-1147
cr             +Frank Polo,    1475 SW 8th St,    Apt 411,    Miami, Fl 33135-3891
26851870       +Frank E. Polo,    9619 Fontainebleau Blvd.,    Apt. 317,    Miami, FL 33172-6870
```

Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.  
NONE.    TOTAL: 0

        ***** BYPASSED RECIPIENTS *****  
NONE.    TOTAL: 0

Addresses marked '+' were corrected by inserting the ZIP or replacing an incorrect ZIP.  
USPS regulations require that automation-compatible mail display the correct ZIP.

Transmission times for electronic delivery are Eastern Time zone.

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed. R. Bank. P. 2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: May 02, 2018                            Signature: _/s/Joseph Speetjens_

---

## CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on April 30, 2018 at the address(es) listed below:
```
              Alexander G. Smith    alex@agsmithtrustee.com, FL52@ecfcbis.com
              Collette B Cunningham    on behalf of Defendant    United States Of America
               Collette.Cunningham@usdoj.gov,
               dajana.mihaljevic@usdoj.gov;Chantal.sabino@usdoj.gov;Brittany.Robinson2@usdoj.gov
              Edward P Jackson    on behalf of Plaintiff Lilly Josephine Real edward@edwardpjackson.com,
               traci@edwardpjackson.com,linda@edwardpjackson.com,jacksonpacer@gmail.com,
               christina@edwardpjackson.com;p.er70969@notify.bestcase.com
              Edward P Jackson    on behalf of Debtor Lilly Josephine Real edward@edwardpjackson.com,
               traci@edwardpjackson.com,linda@edwardpjackson.com,jacksonpacer@gmail.com,
               christina@edwardpjackson.com;p.er70969@notify.bestcase.com
              United States Trustee - JAX 13/7    USTP.Region21.OR.ECF@usdoj.gov
                                                                                             TOTAL: 5
```

ORDERED.

Dated: April 30, 2018

                                                    Jerry A. Funk
                                                    United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                                                Case No. 3:16-bk-3913-JAF

                                                          Chapter 7

LILLY J. REAL,

      Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

       This case came before the Court upon the Motion for Sanctions against Creditor, Frank Polo filed by the Debtor (the "Motion for Sanctions") (Doc. 12) and Motion to Dismiss of Frank E. Polo for Lack of Personal Jurisdiction, Improper Venue, and Motion to Quash for Defective Service of Process on [the Motion for Sanctions] and for Violation of Due Process (the "Motion to Dismiss") (Doc. 14).  The Court conducted a trial on the Motion for Sanctions and the Motion to Dismiss on January 8, 2018.  In lieu of oral argument, the Court directed the parties to submit post-trial memoranda in support of their respective positions.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusion of Law.

**<u>Findings of Fact</u>**

On October 24, 2016, the Debtor filed this Chapter 7 bankruptcy petition. On October 25, 2016, the Court entered a Notice of Chapter 7 Bankruptcy Case—No Proof of Claim Deadline (the "Notice of Commencement") (Debtor's Ex. 1, Doc. 4). The Notice of Commencement established February 13, 2017 as the deadline for creditors to file a complaint objecting to the Debtor's discharge or seeking to have their debt excepted from the Debtor's discharge. It also instructed creditors not to file a proof of claim. Specifically, it stated "[n]o property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline." No further notice has been given directing creditors to file a proof of claim.

The Debtor is an attorney who is licensed to practice law in Florida. The Debtor is currently employed as a family law mediator for the state of Florida in the Fourth Judicial Circuit. The Debtor previously served as a guardian ad litem in numerous cases in Miami. In 2013, the Debtor was appointed as a guardian ad litem in a family law case (the "Custody Proceeding") involving Frank Polo ("Mr. Polo") and Merlin Hernandez ("Ms. Hernandez"), the mother of Mr. Polo's then one year old twins (the "children"). The Debtor was to help choose a daycare for the children and to decide the best interests of the children with respect to time sharing and other issues. As part of her duties, the Debtor conducted two home visits with Ms. Hernandez, two home visits with Mr. Polo, and a number of visits to various daycares/preschools. The Debtor's two home visits with Mr. Polo (and his wife and children) were at 9619 Fontainebleau Blvd., Apt. 317, Miami, FL 33172 (the "Fontainebleau Address") on July 14, 2013 and February 23, 2014.

2

The relationship between Mr. Polo and Ms. Hernandez and the ensuing custody battle were extremely contentious. On February 10, 2014, the day before a scheduled home visit with Mr. Polo (and his wife and children), Mr. Polo sent the Debtor an email titled "I want this case to stop." (Debtor's Ex. 3). The email stated in part "I know you all have the power to take my children away and to be honest, [i]t will hurt me a lot and will probably kill me alive. I will just go to court and I will ask the judge to give my children to [Ms. Hernandez], if I have to pay a child support I don't care, but I will detach myself from my children even if I die alive … Once again, tomorrow will be the last time I will see my children. I am giving them to [Ms. Hernandez] after that … Please, confirm if you are coming tomorrow, I would like to enjoy my last time with my children as much as possible." (Id.) The Debtor was disturbed by the email and, as a result, on February 11, 2014, sent an email to the director of the daycare the children attended requesting that the daycare not allow Mr. Polo to pick the children up that day. (Id.) As a result, Mr. Polo was denied one day of visitation with the children.[1]

On February 13, 2014, upon the Debtor's recommendation, Ms. Hernandez filed an emergency motion in the Custody Proceeding seeking to terminate Mr. Polo's visitation with the children and requesting that he undergo a psychological evaluation to determine his fitness to care for the children. (Polo's Ex. 1). On February 18, 2014, the court in the Custody Proceeding held a hearing and entered an order denying the emergency motion and providing that Mr. Polo was entitled to an additional day of time sharing to make up for the day he lost the previous week. (Polo's Ex. 2).

On February 25, 2014, the Debtor filed her Guardian ad Litem Report and Recommendations, which recommended that the children have a timesharing schedule of 40% with Mr. Polo and 60% with Ms. Hernandez. (Polo's Ex. 5). On February 26, 2014, the court in

---

[1] The home visit scheduled for February 11, 2014 was cancelled and instead occurred on February 23, 2014.

the Custody Proceeding conducted a final hearing at which the Debtor testified.  On August 7, 2014, the court entered its Final Judgment.  The Final Judgment provided that Ms. Hernandez would have time sharing with the children 60% of the time and Mr. Polo would have time sharing with the children 40% of the time.

On August 26, 2014, Mr. Polo filed a Motion to Amend Final Judgment and Child Support Guidelines Worksheet on which he listed his address as 1475 SW 8th Street, Apt. 411, Miami, FL 33135 (the "1475 SW 8th Street Address").

On June 16, 2015, Mr. Polo filed an Amended Motion to Vacate the Final Judgment[2] in the Custody Proceeding seeking, among other things, to change the parties' time sharing so that the parties would each have the children 50% of the time.  (Polo's Ex. 7).  The Amended Motion to Vacate sought to have the court disregard the "false and bias[ed]" testimony and final report of [the Debtor] "[who] has been found to have concealed material facts."  (Id.)  On that same day the Debtor filed a response to the Amended Motion to Vacate and also sent Mr. Polo an email indicating she had filed the response.  (Debtor's Ex. 4).[3]  Mr. Polo responded with an email stating: "Once again you are over reacting.  I do not have any intention to report you to the Florida [B]ar, neither to proceed against you criminally nor in civil court."  (Id.)

There was no further communication between the Debtor and Mr. Polo between June 16, 2015 and January 3, 2017.  When the Debtor filed this bankruptcy case on October 24, 2016, she did not list Mr. Polo as a creditor.  The Debtor testified that it did not occur to her to list Mr. Polo on her schedules because she did not consider him a creditor.

---

[2] Mr. Polo listed his address as the 1475 SW 8th Street Address on the Amended Motion to Vacate.

[3] The record does not contain documentary evidence as to the outcome of Mr. Polo's Amended Motion to Vacate the Final Judgment in the Custody Proceeding.  Mr. Polo testified that the parties settled the matter with each party having 50% time sharing with the children.  However, Mr. Polo appealed the Final Judgment to the Florida Third District Court of Appeal (the "Third DCA").  On March 22, 2017, the Third DCA affirmed per curiam the Final Judgment.  Mr. Polo filed a motion for rehearing and a request for rehearing, which were both denied by the Third DCA by order dated March 30, 2017.  (Polo's Ex. 24).

On January 3, 2017, approximately 18 months after their last communication, Mr. Polo sent the Debtor an email asking her if the address to which he sent the email was a valid email address to "serve [her] some documents." (Debtor's Ex. 12). The Debtor responded that it was. Mr. Polo then indicated that he would contact her within a few days to which the Debtor responded "[o]k, just for your information, I now live in Jacksonville which is over 250 miles from Miami and I cannot afford to travel to Miami for any hearings as I am currently in the middle of a bankruptcy proceeding that I had to file. I could appear by telephone with at least 30 days' notice so that I can get permission from my job to be at a telephone hearing." (Id.) On January 4, 2017, Mr. Polo responded "I don't think your presence will be required for now. Nevertheless, should I need you to be at a hearing in Miami, then I will make sure you are subpoenaed in Jacksonville, so that you can be at the hearing in Miami." (Id.)

On February 13, 2017, the deadline for creditors to file a complaint objecting to the Debtor's discharge or seeking to have their debt excepted from the Debtor's discharge, Mr. Polo filed a complaint (the "Complaint") in the Miami Dade Circuit Court against numerous parties, including the Debtor (the "State Court Action") (Debtor's Ex. 2). The Complaint alleged, among other things, that the Debtor's actions, recommendation, and testimony as the guardian ad litem in the Custody Proceeding resulted in Mr. Polo not receiving the timesharing he was expecting and included the following counts against the Debtor: Count I (Interference with Lawful Custody of a Minor); Count II (Criminal Actions Under Color of Law or Through Use of Simulated Legal Process); Count III (Malicious Prosecution); Count IV (Conspiracy); and Count V (Outrageous Conduct Causing Severe Emotional Distress). The Complaint sought compensatory damages of $150,000.00, punitive damages, and attorney's fees. (Id.) Mr. Polo did not file an adversary proceeding seeking to determine the dischargeability of the Debtor's alleged debt to him on or

before February 13, 2017.  On February 15, 2017, this Court entered a discharge in the Debtor's bankruptcy case. (Debtor's Ex. 1, Doc. 8).

On February 22, 2017, the Debtor received a letter from a law firm informing her she had been sued and seeking to represent her in the State Court Action. (Polo's Ex. 24).  The Debtor accepted service of the Complaint in early March 2017.  (Id.)  At that time, the Debtor believed that Florida's guardian ad litem statute provided immunity and attempted to negotiate a resolution of the case with Mr. Polo.

After the negotiations proved unsuccessful, the Debtor contacted Edward Jackson, her bankruptcy attorney, and informed him of the State Court Action.  On April 3, 2017, the Debtor filed an amendment to her bankruptcy schedules adding Mr. Polo as a creditor. (Debtor's Ex. 5). The Debtor served Mr. Polo with a copy of the amended schedules at the 1475 SW 8th Street Address.  On that same day, the Debtor filed a suggestion of bankruptcy in the State Court Action and also served Mr. Polo with a copy of the suggestion of bankruptcy at the 1475 SW 8th Street Address. (Debtor's Ex. 6).

On April 4, 2017, the court in the State Court Action entered an order placing the case in inactive status due to the Debtor's bankruptcy case and providing as follows: "[t]he Clerk of Court is therefore directed to remove this case from the ACTIVE Status, and designate it as an INACTIVE case category based on [the Debtor's bankruptcy filing].  The parties must return the case to active status by motion, with notice to all parties, within 30 days of the termination of grounds for inactive status, and seeking an order of court returning it to active status." (Polo's Ex. 15).

On July 5, 2017, Mr. Polo filed a Notice of Intent Not to Prosecute in the State Court Action, wherein he acknowledged that he understood that "stay protection extends to [the

Debtor]" and discovery would be limited to "information concerning other defendants" until he obtained relief from the automatic stay. (Debtor's Ex. 8). Mr. Polo listed the 1475 SW 8th Street Address as his address on the Notice of Intent Not to Prosecute.

On July 26, 2017, Mr. Polo filed a Motion for Leave to Amend the Complaint in the State Court Action. (Debtor's Ex. 9). Mr. Polo listed the 1475 SW 8th Street Address as his address on the Motion for Leave to Amend. The fifty-four page proposed amended complaint contains eighteen counts, the following four of which are against the Debtor: Count I (Interference with Lawful Custody of Two Minor[s]); Count VIII (Malicious Prosecution); Count XVII (Outrageous Conduct Causing Severe Emotional Distress); and Count XVIII (Civil Conspiracy) and seeks a money judgment of approximately $5,000,000.00. (Id.) On that same day, Mr. Jackson sent an email to Mr. Polo informing him that he represented the Debtor in this bankruptcy case and indicating that the Debtor had received a discharge on February 15, 2017. (Debtor's Ex. 10). The email went on to state: "In addition to being notified of the bankruptcy by the bankruptcy court, you have actual knowledge because a Suggestion of Bankruptcy was filed in the [State Court Action]. I recently received a copy of a proposed amended complaint that would include [the Debtor] as a defendant. This action is in violation of her bankruptcy discharge. Please take this email as your warning that I will advi[s]e [the Debtor] to seek sanctions against you in the bankruptcy court if you proceed against [her] in the [State Court Case]." (Id.). The email was sent to Mr. Polo at the same email address he used to send the January 3, 2017 email to the Debtor. Although Mr. Polo testified that he did not receive the July 26, 2017 email from Mr. Jackson, the Court does not find this testimony to be credible. The Court finds that Mr. Polo received the email.

On August 31, 2017, Mr. Polo filed in the State Court Action a Motion for Declaratory Judgment on Whether the Debt against [the Debtor] was Discharged in Bankruptcy Proceeding Preventing Plaintiff from Exercising his Right to Obtain Legal Redress for his Injuries under Florida's Laws and Constitutional Rights (the "Motion for Declaratory Judgment"). (Debtor's Ex. 11). Mr. Polo listed the 1475 SW 8th Street Address as his address on the Motion for Declaratory Judgment. The Motion for Declaratory Judgment seeks to have the court in the State Court Action determine that the Debtor's alleged debt to Mr. Polo was not discharged by her bankruptcy filing and to reinstate Mr. Polo's right to continue prosecuting the State Court Action against the Debtor. (Id.)

On September 22, 2017, the Debtor filed the Motion for Sanctions, which she served on Mr. Polo at the 1475 SW 8th Street Address. (Debtor's Ex. 1, Doc. 12). On November 3, 2017, Mr. Polo filed the Motion to Dismiss. (Debtor's Ex. 1, Doc. 14). The Court conducted a preliminary hearing on November 15, 2017 on the Motion to Dismiss and the Motion for Sanctions and scheduled a trial for January 8, 2017.

On December 20, 2017, Mr. Polo filed an Application for Determination of Civil Indigent Status in the Custody Proceeding. For the first time in the Custody Proceeding since at least August 2014, Mr. Polo did not list his address as the 1475 SW 8th Street Address. Instead, he listed his address as the Fontainebleau Address. On January 5, 2018, Mr. Polo filed an Application for Determination of Civil Indigent Status in the State Court Action. For the first time in the State Court Action, Mr. Polo listed his address as the Fontainebleau Address.

## Conclusions of Law

By virtue of the Motion for Sanctions, the Debtor seeks attorney's fees in the amount of $4,935.00, which represent 14.1 hours that Mr. Jackson spent between September 2017 and

February 2018 prosecuting the Motion for Sanctions. The Debtor also seeks to enjoin Mr. Polo from any further attempts to collect any alleged debt owed to him.

### The Motion to Dismiss

First, Mr. Polo seeks dismissal of the Motion for Sanctions on the basis that the Court does not have personal jurisdiction over him because the Motion for Sanctions was sent by certified mail to the 1475 SW 8th Street Address. Mr. Polo alleges that the 1475 SW 8th Street Address is his mother's address, he has not resided there since February 2013, and he does not conduct business there. Mr. Polo asserts that he lives at the Fontainebleau Address where he has lived since February 2013.

A motion in a contested matter must be served as provided for by Bankruptcy Rule 7004, which provides in relevant part:

> [S]ervice may be made within the United States by first class mail postage prepaid as follows: (1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

Bankruptcy Rule 7004. "Rules relating to service of process should be liberally construed to effectuate service." In re Premium Sales Corp., 182 B.R. 349, 351 (Bankr. S.D. Fla. 1995). A liberal construction is especially warranted when a defendant receives actual notice of a suit. Id. Moreover, "[a] defendant who has repeatedly represented to either the plaintiff or to outside parties that one residence is his place of usual abode may be estopped from later contesting that such residence was the proper location for service of process." craigslist, Inc. v. Hubert, 278 F.R.D. 510, 515 (N.D. Cal. 2011); see also Jaffe & Asher v. Brunt, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (holding that defendant was estopped from contesting service at his mother's

home because he made numerous representations that the location where service was made was his address).

Despite Mr. Polo's testimony that he resides at the Fontainebleau Address, the record before the Court evidences that, with the exception of two Applications for Indigent Status (both of which were filed after Mr. Polo began claiming he was not properly served), Mr. Polo used the 1475 SW 8th Street Address on the papers he filed in the Custody Proceeding and the State Court Action. These filings encompass a period beginning no later than August 26, 2014 and continuing until August 31, 2017. The Court holds that Mr. Polo is estopped from challenging service at the 1475 SW 8th Street Address and that service of the Motion for Sanctions at that address was proper. The Court will therefore not dismiss the Motion for Sanctions on that basis.

Secondly, Mr. Polo argues that the Motion for Sanctions should be dismissed because the court in the State Court Action has concurrent jurisdiction with this Court to determine whether the Debtor's debt to him is excepted from her discharge pursuant to § 523(a)(3)(B)[4] and the Debtor therefore lost the jurisdictional protection of § 523(c).[5] State courts have concurrent jurisdiction with bankruptcy courts to determine whether a debt is excepted from discharge under § 523(a)(3)(A) of the Bankruptcy Code. In re Levin, 284 B.R. 308, 312 (Bankr. S.D. Fla. 2002). The majority of courts also hold that state courts have concurrent jurisdiction to determine the dischargeability of a debt under § 523(a)(3)(B). See, e.g., In re Keenom, 231 B.R 116, 126

---

[4] Section 523(a)(3) sets forth the circumstances under which the debt owed to an unscheduled creditor will not be discharged. Subparagraph (A) deals with debts "not of a kind specified in [§ 523(a)] (2), (4), or (6)" and subparagraph (B) deals with debts "of a kind specified in [§ 523(a)] (2), (4), or (6)." 11 U.S.C. § 523(a)(3) (2016).

[5] Section 523(c)(1) provides that "[e]xcept as provided in subparagraph (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section. 11 U.S.C. § 523(c)(1) (2016).

(Bankr. M.D. Ga. 1999) ("Statutory scheme provides that a state court can decide whether the creditor has a colorable or viable claim that the debt is of a kind specified in sections 523(a)(2), (a)(4), or (a)(6) without intruding on the exclusive jurisdiction of the bankruptcy courts to determine if it actually is such a debt."); In re Massa, 217 B.R. 412, 420 (Bankr. W.D.N.Y. 1998); In re Franklin, 179 B.R. 913, 924 (Bankr. E.D. Cal. 1995); but see In re Padilla, 84 B.R. 194, 197 (Bankr. Colo. 1987) ("Bankruptcy Court has concurrent jurisdiction under § 523(a)(3)(A) and exclusive jurisdiction under § 523(a)(3)(B)"). Even assuming for purposes of argument that the court in the State Court Action has concurrent jurisdiction with this Court to determine whether a debt is non-dischargeable under both §§ 523(a)(3)(A) and (B), there is no evidence before the Court that the court in the State Court Action has made such a determination. Concurrent jurisdiction, by definition, does not deprive this Court of jurisdiction. This Court has jurisdiction to make such a determination regardless of the state court's jurisdiction and will not dismiss the Motion for Sanctions on the basis that it lacks jurisdiction.

**The Motion for Sanctions**

The Court turns to the issue of whether sanctions should be imposed against Mr. Polo for a violation of the discharge injunction. The threshold issue before the Court is whether the Debtor's alleged debt to Mr. Polo was discharged by the entry of her discharge.[6] Mr. Polo argues that the Debtor's alleged debt to him is excepted from her discharge pursuant to 11 U.S.C. § 523(a)(3) because it was not timely listed on her bankruptcy schedules and he was not timely

---

[6] Bankruptcy Rule 7001(6) requires that an adversary proceeding be filed to determine the dischargeability of a debt. However, parties can waive their right to an adversary proceeding. Matter of Zale Corp., 62 F.3d 746, 763 (5th Cir. 1995). Compliance with the requirements of an adversary proceeding may be excused by waiver so long as the parties are apprised of and have a chance to address all of the issues being decided. Id. (citations omitted). The Court finds that Mr. Polo was served in compliance with Rule 7004 and was provided an opportunity to be heard both by appearing at and participating in the trial and by filing a post-trial memorandum. Accordingly, the Court finds that he waived the right to contest the determination of the dischargeability of the Debtor's alleged debt to him by a motion in the main case rather than by a complaint and adversary proceeding.

11

notified of the Debtor's bankruptcy filing. "The primary purpose of [§ 523(a)(3)] is fairness to those creditors who, through no fault of their own, were somehow prejudiced by not having the opportunity to protect their rights and assert their interests." Manzanares v. State Farm Fire & Cas. Co., 345 B.R. 773, 782 (Bankr. S.D. Fla. 2006). "The statute recognizes that such creditors might be prejudiced by being denied either a meaningful participation in the distribution of assets or the ability to challenge the dischargeability of their claim for one of the reasons enumerated in §§ 523(a)(2), (a)(4), and (a)(6)." Id. "The statutory language [of § 523(a)(3)] clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates." Byrd v. Alton (In re Alton), 837 F.2d 457, 460 (11th Cir. 1988). "This furthers the bankruptcy policy of affording a 'fresh start' to the debtor by preventing a creditor, who knew of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is [non]dischargeable." Id.

Section 523(a)(3) provides that a discharge under § 727 does not discharge an individual debtor from any debt:

> neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit--
> (A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request;

11 U.S.C. § 523(a)(3) (2016).  Mr. Polo argues that the alleged debt owed to him by the Debtor is of a kind specified in § 523(a)(6) and is therefore excepted from her discharge under § 523(a)(3)(B).  Courts are divided on the level of proof necessary to establish whether a debt is "of a kind specified in [§ 523(a)](2), (4), or (6)."  Some courts require only a showing that a colorable or viable claim under one of those sections exists.  See, e.g., In re Keenom, 231 B.R. 116, 126 (Bankr. M.D. Ga. 1999); Haga v. National Union Fire Ins. Co. (In re Haga), 131 B.R. 320, 326 (Bankr, W.D. Tex. 1991).  Other courts read "of a kind" to require a determination on the merits.  See, e.g., In re Richie, 380 B.R. 868, 870-871 (Bankr. M.D. Fla. 2007); In re Jones, 296 B.R. 447, 450 (Bankr. M.D. Tenn. 2003).  At the trial, the Court heard the testimony of the Debtor and Mr. Polo and admitted numerous exhibits which detail the entire chronology of the Custody Proceeding as it relates to the Debtor.  Upon a review of the record, it is abundantly clear to the Court that Mr. Polo's claim against the Debtor does not rise even to the level of a colorable or viable claim under § 523(a)(6) and is therefore not of a kind specified in § 523(a)(6).[7]  Accordingly, the Court must analyze whether the alleged debt is excepted from the Debtor's discharge under § 523(a)(3)(A) rather than § 523(a)(3)(B).

"For most creditors, the fundamental right enjoyed in bankruptcy is the right to file a proof of claim because filing a claim is obviously necessary in order to participate in the estate's distribution of assets."  Judd v. Wolfe (In re Judd), 78 F.3d 110, 114 (3d Cir. 1996).  "Section 523(a)(3)(A) honors this right, by excepting from discharge, debts owed to creditors who did not know about the case in time to file a proof of claim."  Id. at 115.  "In a case where there are no assets to distribute, however, the right to file a proof of claim is a hollow one."  Id.  Unless [non]

---

[7] Section 523(a)(6) excepts from a debtor's discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6) (2016).  "A debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or is substantially certain to cause injury."  Maxfield v. Jennings (In re Jennings), 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting In re Walker, 48 F.3d 1161, 1163 (11th Cir. 1995)).  Malicious means wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.  Id.

exempt assets are later discovered, the time for filing a proof of claim will never expire. Id. at 114. "An omitted creditor who would not have received anything even if he had been originally scheduled, has not been harmed by omission from the bankrupt's schedules and the lack of notice to file a proof of claim." Id. Accordingly, if the debt at issue is not a debt described under § 523(a)(2), (4), or (6), the debt is discharged by § 727(b), whether or not it was listed. Id.; see also In re Garrett, 266 B.R 910, 914 (Bankr. S.D. Ga. 2001) ("[A]n unscheduled creditor in a case with no assets is never prevented from 'timely filing' proof of its claim.") Because this bankruptcy case is a no asset case, Mr. Polo was not prevented from timely filing a proof of claim and the Debtor's alleged debt to him is not excepted from discharge on that basis.

As the Court noted, it is clear that the alleged debt is not of a kind specified in § 523(a)(6). Even if it was, however, the alleged debt would not be excepted from the Debtor's discharge under § 523(a)(3)(B). Mr. Polo received an email from the Debtor on January 3, 2017 wherein she informed him that she lived in Jacksonville and was "in the middle of a bankruptcy proceeding that I had to file." Mr. Polo argues that the email did not "amount to" actual knowledge because he did not know anything about bankruptcy and did know the meaning of the terms "automatic stay," "meeting of creditors," or "discharge injunction." Actual knowledge simply refers to knowledge of a bankruptcy filing, not knowledge of its legal effect. Nonetheless, when Mr. Polo received the email from the Debtor informing him of her bankruptcy, he had completed three semesters of law school. To the extent that he was not familiar with bankruptcy law and his rights, remedies, and obligations as a potential creditor, he had an obligation to either familiarize himself therewith or hire an attorney to represent him. His failure to do either is not an excuse. The Court finds that Mr. Polo had actual knowledge of the Debtor's bankruptcy case on January 3, 2017.

Moreover, the Court finds that the 41 days between January 3, 2017, the date Mr. Polo became aware of the Debtor's bankruptcy case, and February 13, 2017, the deadline for a creditor to file an adversary proceeding, was ample time for him to file such a proceeding. Such a finding is buttressed by the fact that on February 13, 2017, Mr. Polo filed the Complaint, a detailed 19 page multi-count complaint against the Debtor, in the State Court Action. Because there is no deadline to file a proof of claim in this case and because Mr. Polo received actual notice of the case in time to file a complaint to determine the dischargeability of the Debtor's alleged debt to him, the Debtor's alleged debt to him is not excepted from her discharge pursuant to §523(a)(3) and was discharged by the discharge entered on February 15, 2017.[8]

The Court now turns to the issue of whether Mr. Polo violated the discharge injunction. Section 524 of the Bankruptcy Code operates as a post-discharge injunction against the collection of debts discharged in bankruptcy and is thus the embodiment of the Code's fresh start concept. Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-1389 (11th Cir. 1996). Section 524 provides in relevant part:

> A discharge in a case under this title-(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived; [and] (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

11 U.S.C. § 524 (2016). Although § 524 does not explicitly authorize monetary damages for a violation of the discharge injunction, a court may award actual damages pursuant to the statutory contempt powers set forth in 11 U.S.C. § 105. Hardy, 97 F.3d at 1389-1390. A creditor may be

---

[8] While Mr. Polo does not appear to argue that the Debtor's alleged debt to him is of a kind specified in § 523(a)(2) or (a)(4), even if it was, it would not be excepted from the Debtor's discharge for the same reasons.

liable for contempt under § 105 if it willfully violates § 524's permanent injunction. <u>Hardy</u>, 97 F.3d at 1390. A creditor's conduct in violating the discharge injunction is willful if the creditor: 1) knew that the discharge injunction was invoked; and 2) intended the actions, which violated the discharge injunction. <u>Id.</u> "The willfulness requirement refers to the deliberateness of the creditor's conduct and its knowledge of the bankruptcy filing," and a creditor's subjective beliefs or intent are irrelevant. <u>In re Plummer</u>, 513 B.R. 135, 147 (Bankr. M.D. Fla. 2014). "A creditor's mistaken belief that his or her actions [do] not violate § 524(a) is no defense to a § 105 contempt action." <u>Id.</u>

     Based upon the record before it, the Court finds that the imposition of sanctions is warranted. In his email to Mr. Polo dated July 26, 2017, Mr. Jackson, the Debtor's bankruptcy attorney, made clear that if Mr. Polo proceeded against the Debtor in the State Court Case, he would advise the Debtor to seek sanctions for a violation of the discharge injunction. Yet, Mr. Polo filed the Motion for Declaratory Action. It is clear from a review of the Motion for Declaratory Action that Mr. Polo was proceeding under the theory that the Debtor's alleged debt to him was excepted from her discharge under § 523(a)(3). The prudent course of action for Mr. Polo at that time would have been to research the case law as to § 523(a)(3), which indisputably provides that an unscheduled creditor in a no asset Chapter 7 bankruptcy case is never prevented from timely filing a proof of claim. Moreover, even assuming that the alleged debt was of a kind specified in § 523(a)(2), (a)(4), or (a)(6), the statute makes clear that the debt owed to a creditor who receives actual notice of the bankruptcy in time to file an adversary proceeding is not excepted from the debtor's discharge. Although there may be rare circumstances under which 41 days would not be enough time for a creditor to file an adversary proceeding, this case does not present those circumstances. While the Court finds it unlikely that Mr. Polo subjectively

believed that the alleged debt owed to him by the Debtor was not discharged, such a belief would be irrelevant in any event. The alleged debt owed by the Debtor to Mr. Polo is clearly dischargeable, and Mr. Polo's mistaken beliefs are not a defense to the Motion for Sanctions.

Mr. Jackson attached to his post-trial memorandum a detailed accounting of the attorney's fees he incurred in prosecuting the Motion for Sanctions. The accounting includes the date the fees were incurred, along with a description of the work performed and the time spent on each task. The Court finds that the attorney's fees of $4,935.00 are reasonable and will impose sanctions in that amount.

### Conclusion

Service of the Motion for Sanctions was proper, and this Court has jurisdiction to determine whether the Debtor's alleged debt to Mr. Polo is non-dischargeable under § 523(a)(3). The Court will deny the Motion to Dismiss. The Debtor's alleged debt to Mr. Polo is not excepted from her discharge under § 523(a)(3). Mr. Polo willfully violated the discharge injunction, and the Court will impose sanctions in the amount of $ 4,935.00. The Court has entered a separate order consistent with these Findings of Fact and Conclusions of Law.

The Clerk's Office will serve a copy of this Order on Interested Parties.